IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RENE COLON PEREZ, his wife
PRISCILLA BACO BAGUE and the
conjugal partnership between them

Plaintiffs/Counter-Defendants

vs

METAN MARINE, INC.; MICHAEL J.
BORRELLI

Defendants/Counter-Claimants

CIVIL 17-2170CCC

## OPINION AND ORDER

Before the Court are defendants Metan Marine Restoration, Inc. ("Metan Marine") and Michael J. Borrelli's (together the "defendants") Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction or for Venue Transfer (**d.e. 7**) filed on November 7, 2017 and plaintiffs' René Colón Pérez ("Colón"), his wife Priscila Bacó Bagué ("Bacó") and the conjugal partnership between them's (together the "plaintiffs") Opposition to Motion to Dismiss (d.e. 11). For the reasons set forth below, defendants' Motion to Dismiss or for Venue Transfer is DENIED, in part, and GRANTED, in part.

### FACTUAL AND PROCEDURAL BACKGROUND

This action involves the restoration of a classic Bertram boat (the "vessel"). Plaintiffs hired Metan Marine to restore the vessel largely because of their familial relationship with Borrelli, director of Metan Marine and domestic partner of the mother of Colón and Bacó's son's fiancée. The parties met in February 2016, prompting Borrelli to visit Puerto Rico to inspect the vessel later

that month.  During this visit, Borrelli and Colón negotiated the Statement of Work (the "contract") and agreed to Metan Marine restoring the vessel.  During the following months, Borrelli and Colón coordinated the transportation of the vessel to Jacksonville, Florida, where Borrelli picked it up and took it to Metan Marine's facilities in Massachusetts.  Metan Marine determined that the vessel's hull needed to be replaced, which required additional work and expenses.  Colón consented to this change, but Borrelli allegedly increased the price of other components in the process without consulting the vessel owners and the project also took longer than Borrelli represented.

On September 1, 2017, Colón and Bacó sued Metan Marine and Borrelli. Their complaint was amended on October 30, 2017, after Colón wired Borrelli a portion of the project's cost and Borrelli allegedly failed to provide sufficient evidence of the progress achieved to validate the delay.  They brought claims sounding in breach of contract under Puerto Rico law against defendants for unilaterally changing the price of the vessel's restoration, destroying it in the process, and negligently or willfully misrepresenting Metan Marine's ability to restore it.  d.e. 6, ¶¶ 31-51).  They also brought a breach of contract claim under admiralty law. (d.e. 6, ¶¶ 52-55).

On November 11, 2017, Borrelli and Metan Marine moved to dismiss for lack of personal jurisdiction and due to insufficient contacts, in the alternative, to change venue to the District of Massachusetts.  They also claim that Massachusetts is convenient for the parties, witnesses, and in the interest of justice because that is where the Metan Marine employees who worked on

Colón's vessel are, the vessel itself is still in Metan Marine's facilities in Massachusetts, and the consultants who recommended replacing its hull are in Rhode Island and New Jersey.

Plaintiffs' opposition of December 1, 2017 argues that this Court has personal jurisdiction over defendants. Plaintiffs contend that Borrelli's trip to Puerto Rico to inspect the vessel and his emails to Colón show he purposefully availed himself of the laws of Puerto Rico by conducting business here and are sufficiently related to their underlying claims. As to venue change, they contend that litigating in Massachusetts is not convenient enough to warrant altering their choice of forum.

## DISCUSSION

**I.    Personal Jurisdiction**

### A.   Legal Standard

"To hear a case, a court must have personal jurisdiction over the parties, 'that is, the power to require the parties to obey its decrees.'" *Astro-Med, Inc. v. Nihon Kohden America,* Inc. 591 F.3d 1, 8 (1st Cir. 2009) (quoting *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 35 (1st Cir. 1999)). Personal jurisdiction comes in "two varieties, general and specific. General personal jurisdiction … is broad in its ambit: it is the power of a forum-based court … over a defendant 'which may be asserted in connection with suits not directly founded on [that defendant's] forum-based conduct . . .')." *Pritzker v. Yari*, 42 F.3d 53 (1st Cir. 1994) (citing *Donatelli v. National Hockey League*, 893 F.2d 459, 462-63 (1st Cir. 1990)). "General jurisdiction exists when the

litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992).

"Specific personal jurisdiction, by contrast, is narrower in scope and may only be relied upon 'where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.'" *Pritzker v. Yari*, 42 F.3d at 60 (quoting *United Elec. Workers*, *960* F.2d at 1088-89). When determining whether a federal court may assert specific jurisdiction over foreign parties, "[t]he Supreme Court has held that the Due Process Clause of the Fourteenth Amendment limits the power of a court to render a valid personal judgment against a nonresident defendant." *Eon Corp. v. AT&T Mobility, LLC*, 879 F. Supp. 2d 194, 201 (D.P.R. 2012) (referring to *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S. Ct. 2846, 2853, 180 L. Ed. 2d 796 (2011); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)). Consequently, "[t]he proper exercise of specific [personal] jurisdiction hinges on satisfaction of two requirements: [1], that the forum in which the federal district court sits has a long-arm statute that purports to grant jurisdiction over [] defendant; and [2], that the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution." *Pritzker*, 42 F.3d at 60 (referring to *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 204 (1st Cir. 1994); *United Elec., Radio and Mach.*

*Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1086 (1st Cir. 1992); *Hahn v. Vermont Law Sch.*, 698 F.2d 48, 51 (1st Cir. 1983).

This diversity suit also involves a federal question given plaintiffs' assertion of admiralty claims (d.e. 6, ¶¶ 52-55). For admiralty claims, "[t]he limits on the court's personal jurisdiction are based in the Due Process clause of the Fifth Amendment, not in the Fourteenth Amendment as is true for diversity cases." *Zeus Projects Ltd. v. Perez y Cia. de Puerto Rico, Inc.* 187 F.R.D. 23, 28-30 (D.P.R. 1999) (referring to *163 Pleasant Street*, 960 F.2d at 1085; *Lorelei Corp. v. County of Guadalupe*, 940 F.2d 717, 719 (1st Cir. 1991); *Toledo v. Ayerst–Wyeth Pharmaceutical, Inc.*, 852 F. Supp. 91, 102 (D.P.R. 1993); *Colon v. Gulf Trading Co.*, 609 F. Supp. 1469, 1472 (D.P.R. 1985)). Nonetheless, "ultimately there is no practical difference in the way in which the Court proceeds towards its determination" of whether there is specific jurisdiction because "the defendant[s] must be served pursuant to a federal statute or Civil Rule." *Zeus Projects Ltd*, 187 F.R.D. at 28-30; *see also Bohnenberger v. MCBC Hydra Boats, LLC*, 2017 WL 397656, *4 (D. Mass. 2017). Given there is no federal statute providing for service on defendants, courts "return[] to the familiar realm of minimum contacts, the long-arm statute, and the Fourteenth Amendment." *Zeus Projects Ltd*, 187 F.R.D. 23 at 29.

The First Circuit has repeatedly held that Puerto Rico's long-arm statute is "coextensive with the reach of the Due Process Clause." *Carreras v. PMG Collins, LLC.*, 660 F.3d 549, 552 (1st Cir. 2011); *see also Pritker*, 42 F.3d

at 60. Whether asserting specific jurisdiction over Borrelli and Metan Marine comports with Due Process thus depends on the nature of their contacts with Puerto Rico and whether these were sufficient to give them "fair warning" that they could be sued there. *See Burger King Corp. v. Rudzecwicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985).

To make this determination, courts conduct a tripartite analysis. *See Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 35 (1st Cir. 1998); *Ticketmaster*, 26 F.3d at 206:

> First, an inquiring court must ask whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum. Second, the court must ask whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws. Third, if the proponent's case clears the first two hurdles, the court then must analyze the overall reasonableness of an exercise of jurisdiction in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction. An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction.

*Afunday Charters, Inc. v. Spencer Yachts, Inc.*, 261 F. Supp. 3d 257 (D.P.R. 2017) (citing *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 288 (1st Cir. 1999)).

Since defendants moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff[s] ultimately bear[] the burden of persuading the court that jurisdiction exists." *Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1, 8 (1st Cir. 2009). An evidentiary hearing was not held, so the "plaintiff need only make a prima facie showing that defendants are subject to personal jurisdiction." *Eon Corp.*, 879 F. Supp. 2d at 201. The Court

"accept[s] the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." *Astro-Med, Inc., 591 F.3d at* 8 (quoting *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007)).  It "accept[s] those facts as true, irrespective of whether the defendant disputes them, and in so doing, construe[s] them in the light most congenial to the plaintiff's jurisdictional claim… The facts put forward by the defendant 'become part of the mix only to the extent that they are uncontradicted.'" *Id.*   "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp.,* 471 U.S. at 477, 105 S. Ct. at 2184, 85 L. Ed. 2d 528 (1985) (quoting "*International Shoe Co. v. Washington*, 326 U.S. at 320, 66 S. Ct. at 160.).

The Court now turns to the constitutional analysis.

**B.    General Jurisdiction**

Colón and Bacó did not argue that Borrelli or Metan Marine have the ongoing and continuous contacts required for general jurisdiction.  Nor could they – Metan Marine is a Massachusetts corporation with its principal place of business in Massachusetts. (d.e. 7, p. 11)  The company is not authorized to do business in Puerto Rico, has never had offices in Puerto Rico, does not own or use property in Puerto Rico, has never had any directors or employees domiciled in Puerto Rico, does not have bank accounts in Puerto Rico, and has

never contracted with Puerto Rico residents until Colón and Bacó. *Id.* Borrelli in turn is a Massachusetts resident who does not own or use property in Puerto Rico and has no bank accounts in Puerto Rico. *Id.* The Court does not have general jurisdiction over Borrelli or Metan Marine.

## C.    Specific Jurisdiction

We begin our analysis by evaluating Borrelli and Metan Marine's "minimum contacts related to the plaintiff's claims." *See International Shoe Co.,* 326 U.S. at 316, 66 S. Ct. at 160, 90 L. Ed. 95. Contrary to defendants' position, we note from the outset that Borrelli's contacts with Puerto Rico can be imputed to Metan Marine. *See Jet Wine & Spirits, Inc. v. Bacardi,* 298 F.3d 1, 7-8 (1st Cir. 2002) (stating: "[plaintiff] may rely in whole or in part on actions imputed to [corporate defendant] through its agents—as indeed it must, because any action legally attributed to a corporation is that of one agent or another."); *see also Int'l Shoe Corp*, 326 U.S. at 316-317 (stating: "since the corporate personality is a legal fiction…, it is clear that … 'presence' without, as well as within, the state . . . can be manifested only by activities carried on its behalf by those who are authorized to act for it").[1]

Borrelli's contacts also serve as a basis for jurisdiction over him individually given that he was personally involved in the alleged breaches of contract and tortious conduct. *See Alvarado-Morales v. Digital Equipment*

---

[1]The case defendants rely on, *Platten v. HF Bermuda Exempted Ltd.,* 437 F.3d 118 (1st Cir. 2006), involves whether a subsidiary's employee's acts may be imputed on the corporate principal for jurisdictional purposes, not the acts of the corporation's officer an agent as in the instant case.

*Corp.*, 843 F.2d 613, 617 (1st Cir. 1988) (finding jurisdiction over the individual officers or directors of a corporation cannot be imputed from jurisdiction over the corporation, absent independent, personal involvement).

### *1.    Relatedness*

Relatedness "asks whether 'the claim[s] underlying the litigation . . . directly arise out of, or relate to, the defendant's forum-state activities.'" *Astro-Med, Inc.*, 591 F.3d 1, 9 (quoting *N. Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 25 (1st Cir. 2005)). "There must be more than just an attenuated connection between the contacts and the claim; the defendant's in-state conduct must form an 'important, or [at least] material, element of proof' in the plaintiff's case." *Phillips v. Prairie Eye Center*, 530 F.3d 22, 27 (1st Cir. 2008) (quoting *Harlow*, 432 F.3d at 61). In this Circuit, "[t]he relatedness test is a 'flexible, relaxed standard.'" *Adelson*, 652 F.3d at 81 (1st Cir. 2011) (quoting *N. Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 25 (1st Cir. 2005)).

As to Colón and Bacó's breach of contract claims, the Court looks at whether "the defendant's activity in the forum state was instrumental either in the formation of the contract or its breach." *Adams v. Adams*, 601 F.3d 1, 6 (1st Cir. 2010). Since their tort claim alleges willful or negligent deceit related to the restoration contract, "the two claims are sufficiently connected that the difference is of no concern." *See Phillips*, 530 F.3d at 27; *see also Jet Wine & Spirits, Inc.*, 298 F.3d at 10 (noting that when an intentional tort involves the formation of a contract "the two inquiries begin to resemble each other.").

Borrelli made several contacts with Puerto Rico in relation to the vessel's restoration that are material to plaintiffs' proof. He visited Puerto Rico to inspect the vessel on February 26, 2019. (d.e. 7, ¶ 17). Plaintiffs provided seven email messages showing Borrelli reached out to them in Puerto Rico during the subsequent four months to finalize the terms of their agreement. (d.e. 11-2, ¶ 5). Borrelli contacted Colón from his email account at Metan Marine to provide him pictures and videos of Metan Marine's past engagements, a proposal for the vessel's restoration, and a quote to coordinate its transportation from Puerto Rico to Jacksonville, FL. All of Borrelli's contacts were done on behalf of Metan Marine and for the purpose of negotiating and executing the contract. These contacts were integral to the formation of the contract and also formed part of his alleged deceit. Where a defendant's contacts with Puerto Rico were integral to the formation of a contract, they are related to plaintiff's claims. *See Rodriguez v. Dixie Southern Indus., Inc.*, 113 F. Supp. 2d 242, 251-52 (D.P.R. 2000).

The Court finds that Borrelli and Metan Marine's contacts with Puerto Rico satisfy the relatedness test.

### 2. *Purposeful Availment*

This factor focuses on whether "defendant's in-state contacts [] represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." *Astro-Med, Inc.*, 591 F.3d at 10 (quoting *N. Laminate Sales*,

403 F.3d at 25). "The cornerstones upon which the concept of purposeful availment rest[s] are voluntariness and foreseeability." *Daynard*, 290 F.3d at 61 (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1392 (1st Cir. 1995)). "Voluntariness requires that the defendant's contacts with the forum state 'proximately result from actions by the defendant himself'…The contacts must be deliberate, and not based on the unilateral actions of another party… Foreseeability requires that the contacts with the forum state be of a nature that the defendant could reasonably anticipate being hailed into court there." *Adams*, 601 F.3d (quoting *Phillips*, 530 F.3d at 28).

Colón submitted a sworn statement alleging that Borrelli made "constant unsolicited approaches" to restore his vessel and that "on his own initiative and without [their] request or approval, decided to … fly to Puerto Rico [to] inspect the vessel." (d.e. 11-1 ¶¶ 6-7). Borrelli refutes this assertion, averring that it was Colón and his son who approached him to restore the vessel. (d.e. 7-1, ¶ 17). At this juncture, the Court cannot definitively tell whether defendants' contacts with Puerto Rico resulted from plaintiffs' unilateral activity. Given that plaintiff's assertions are supported, the Court must take them as true, even when Borrelli refutes them. *Astro-Med, Inc.*, 591 F.3d at 8. Even if plaintiffs potentially started discussions of the vessel's restoration with Borrelli, Borrelli's continued correspondence to finalize a proposal, complete the transaction, request payments, and facilitate the vessel's transportation from San Juan to Florida (d.e. 11-2, ¶¶ 3, 5) "do[] not amount to the kind of unilateral action that makes the forum-state contacts involuntary." *See Nowak v. Tak How*

*Investments, Ltd.*, 94 F.3d 708, 717 (1st Cir. 1996).  Thus, the Court finds that defendants' contacts with Puerto Rico were voluntary for purposes of personal jurisdiction.

Borrelli's voluntary visit to Puerto Rico and his subsequent emails to finalize the proposal does not end the purposeful availment inquiry.  The Court must determine whether these contacts with Puerto Rico are sufficient for the defendants to have foreseen the possibility of being sued in Puerto Rico.[2]

This district has found foreseeability of being sued in Puerto Rico for breach of contract against an individual defendant where the CEO's contacts with Puerto Rico were instrumental in the formation of the contract.  *See Zeus Projects Ltd.*, 187 F.R.D. at 32.  Borrelli's trip to inspect the vessel and negotiation of the contract were sufficient contacts for him to reasonably have anticipated being sued individually in Puerto Rico.

In terms of Metan Marine, this district has found foreseeability to be sued in Puerto Rico against a corporation when the underlying contract entailed ongoing contacts with Puerto Rico throughout the agreement.  *See, e.g. New Comm Wireless v. SprintCom, Inc.*, 213 F. Supp. 2d 61 (D.P.R. 2002) (finding defendants could foresee being sued in Puerto Rico where Roaming Service

---

[2] Plaintiff's reference to Metan Marine's profile on Better Business Bureau is irrelevant to the Court's analysis (d.e. 11, p. 9).  Colón and Bacó do not allege relying on the website in hiring Metan Marine for their vessel's restoration.  This purported contact with Puerto Rico is not related to any of their claims, failing the first prong of the personal jurisdiction analysis.  *See, e.g. Carreras v. PMG Collins, LLC*, 660 F.3d 549, 554 (1st Cir. 2011) (finding contacts that have no bearing on formation or breach of an agreement immaterial to a claim of specific jurisdiction).

Agreement was a long-term contract required in order for defendants to provide services within Puerto Rico). Similarly, when the nature of the contract entails a substantial connection to Puerto Rico, defendant can foresee being sued there. *See Pritzker*, 42 F.3d at 62. The contract at issue does not share either of these characteristics. The contract was to be performed entirely in Massachusetts and the nature of the agreement did not require further contacts with Puerto Rico apart from communications with Colón.

These communications into Puerto Rico are by themselves insufficient for Metan Marine to have foreseen being sued there. *See Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 29 (1st Cir. 2008) (stating:"[i]t stretches too far to say that [corporate defendant], by mailing a contract with full terms to Massachusetts for signature and following up with three e-mails concerning the logistics of signing the contract, should have known that it was rendering itself liable to suit in Massachusetts."). Borrelli's promotion of Metan Marine's services by emailing Colón past restoration projects alone are also insufficient for Metan Marine to have foreseen litigation in Puerto Rico. *See Carreras v. PMG Collins, LLC*, 660 F.3d 549, 555-56 (1st Cir. 2011) (finding that marketing communications targeting forum that are not part of a broad marketing effort does not meet the 'purposeful availment' element of specific jurisdiction).

However, courts "look to evidence of telephone or electronic communication when a defendant has *not* been physically present in the forum state because it serves as evidence that the defendant 'reached into the forum.'" *Adams*, 601 F.3d at 7 (quoting *Swiss Am. Bank*, 274 F.3d at 622)

(emphasis added).  In this case, the Court "must look beyond [] formalistic measures and evaluate the nature of the contacts and, relatedly, the degree to which they represent a purposeful availment of the forum's protections and benefits." *Pritzker*, 42 F.3d at 62.  Additionally, foreseeability has been met for a breach of contract claim when defendant derives economic benefits from the forum.  *See Pritzker*, 42 F.3d at 62-63.

The Court finds that Borrelli's visit to Puerto Rico to inspect the vessel, integral to the formation of the contract, in addition to his subsequent electronic communications to Puerto Rico on behalf of Metan Marine, are significant contacts for the company to have foreseen being sued there.  With the formation of the restoration contract taking place in Puerto Rico and Colón's payments coming from Puerto Rico, Metan Marine derived a monetary benefit from there.  The need to return the vessel to Puerto Rico, although unclear which party ultimately beard responsibility for it, also suggests Metan Marine should have anticipated some contact with Puerto Rico until that occurrence.

Addressing plaintiffs' claim of negligent or willful deceit, "[t]he threshold showing for purposeful availment is lower in the tort context for the simple reason that a tortfeasor does not often purposely avail himself of the protections of the laws of a forum state… Even so, a tort plaintiff must make some showing as to voluntariness and foreseeability to ensure 'that personal jurisdiction is not premised solely upon a defendant's random, isolated, or fortuitous contacts with the forum state.' *Rodriguez v. Samsung Electronics Co., Ltd.*, 827 F. Supp. 2d 47, 52 (quoting *Sawtelle*, 70 F.3d at 1391).  Plaintiffs

have made such a showing. The aforementioned analysis of the voluntary nature of Borrelli and Metan Marine's contacts applies to plaintiffs' tort claim. In terms of determining the foreseeability of plaintiffs' tort claim, Colón and Bacó allege that Borrelli's statements "induced them to believe Defendants would restore their Vessel to mint condition" and that they "feel they were fooled and taken advantage of by someone they trusted." (d.e. 6, ¶¶ 43, 46). Plaintiffs assert in essence that Borrelli's alleged misrepresentations caused their pecuniary harm. Borrelli and Metan Marine thus could foresee that the effects of their alleged misrepresentations would be felt by plaintiffs in Puerto Rico and that they consequently could be sued there. *See Saturn Mgmt. LLC v. GEM-Atreus Advisors, LLC,* 754 F. Supp. 2d 272, 280 (D. Mass. 2010). The Court finds that plaintiffs have made a prima facie showing for the 'purposeful availment' factor for their breach of contract and tort claims.

### *3. Reasonableness*

"Once a prima facie showing is made with respect to the existence of minimum contacts, it becomes the defendant's burden to demonstrate that the assertion of jurisdiction would be unreasonable." *Rivera v. Bank One*, 145 F.R.D. 614, 625 (D.P.R. 1993). To determine whether exercising jurisdiction over a non-resident defendant is reasonable courts consider a set of 'gesalt factors'. *See Astro-Med*, 591 F.3d at 10. These factors include "the defendant's burden of appearing, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of

the controversy, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp.*, 471 U.S. at 477. "The factors serve to assist the court in achieving substantial justice. In a close case, they can tip the constitutional balance of the court's analysis." *Mohajer v. Monique Fashions*, 945 F. Supp. 23, 28 (D.P.R. 1996) (referring to *Ticketmaster*, 26 F.3d at 209).

Plaintiffs have shown that Borrelli and Metan Marine's burden of appearing in Puerto Rico would not make jurisdiction over them unreasonable. As evidenced from his email communications with Colón, Borrelli travels on business for Metan Marine's projects. (d.e. 11-2). The First Circuit has held that "the need to travel to New York and Puerto Rico creates no especially ponderous burden for business travelers." Pritzker, 42 F.3d at 64. With daily flights available between Boston and Puerto Rico typically an hour longer than flights between New York and Puerto Rico, Borrelli and Metan Marine would not be unduly burdened by appearing in Puerto Rico. Puerto Rico's interest in adjudicating this dispute is sufficient given its interest in providing redress to its residents when they have been injured. *See Rivera*, 145 F.R.D. at 625; *see also Sawtelle*, F.3d 1381 at 1395. Since plaintiffs reside and work in Puerto Rico, it is clearly more convenient for them to litigate the case here. *See Rivera*, 145 F.R.D. at 625. Neither party provides a significant social policy that weighs heavily in either direction. Given that the majority of the potential witnesses are located in or near Massachusetts, the defendants have shown

that the most efficient resolution of this controversy would be ensured if the case were litigated there; this factor favors Borrelli and Metan Marine.

After balancing the relative significance of each factor, defendants have not met their burden of showing that it would violate due process to subject them to suit in this jurisdiction.

Nonetheless, the court agrees with defendants that it would be more efficient to resolve the dispute in Massachusetts. Having established sufficient contacts for purposes of personal jurisdiction, the Court finds that changing the venue to the District of Massachusetts would be convenient and in the interest of justice. *See Albion v. YMCA Camps Letts*, 171 F.3d 1, 2 (1st Cir. 1999) (finding that transfer of venue under Section 1404(a) is inappropriate where there is absence of personal jurisdiction).

## II.   **Transfer of Venue**

### A.   **Legal Standard**

Section 1404(a) allows "a district court to transfer any civil action to any other district or division where it might have been brought" "for the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). "A determination of venue under § 1404(a) lies in the sound discretion of the district court." *Rivera-Carmona v. American Airlines*, 639 F. Supp. 2d 194, 197 (D.P.R. 2009). "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest

considerations." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581, 187 L. Ed. 2d 487 (2013).

Among the private interest factors to consider, the Supreme Court has listed "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . .; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947) (superseded by statute on other grounds). Public interest factors to consider include the administrative difficulties that follow for courts when litigation is piled up in congested centers instead of being handled at its origin; that jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation; and that there is a local interest in having localized controversies decided at home. *See Id.* at 508-09, 67 S. Ct. 839. These factors are not exhaustive and merely suggest the range of relevant considerations. *Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda.,* 906 F.2d 45, 52 (1st Cir. 1990).

"The burden of proof rests with the party seeking transfer as there is a strong presumption in favor of the plaintiff's choice of forum." *Rivera-Carmona*, 639 F. Supp. 2d at 197.

**B.    Analysis**

"Since 'transfer [according to § 1404(a)] must be to a jurisdiction where the action could have been brought in the first place' the court will, as a threshold matter, inquire as to whether jurisdiction and venue are proper in the transferee court." *Marel Corp. v. Encad Inc.*, 178 F. Supp. 2d 56 (D.P.R. 2001) (quoting *Reyes v. Supervisor of Drug Enforcement Admin.*, 834 F.2d 1093, 1095 (1st Cir. 1987). "[Courts] are not required to determine the best venue, merely a proper venue." *Astro-Med, Inc.,* 591 F.3d at 12.

Undoubtedly, this case could have been brought in the District of Massachusetts.  The instant action involves diverse parties and alleges damages of $654,000.00, giving the District of Massachusetts subject matter jurisdiction over the case.  The District of Massachusetts also has personal general jurisdiction over defendants, as Borrelli resides in Massachusetts and Metan Marine is a Massachusetts corporation with its principal place of business there.  (d.e. 6, ¶¶ 5-6).  Venue in the District of Massachusetts is also proper under the general venue statute 28 U.S.C. § 1391(b)(1) given that both defendants reside in Massachusetts.

Having met these threshold issues, the Court addresses the remaining factors and finds that defendants have met their burden.

### *1.    Convenience of the Parties*

Colón and Bacó are correct that usually there is a "strong presumption in favor of the plaintiff's choice of forum."  *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 13 (1st Cir. 2009).  Nonetheless, "if the operative events

did not take place in the plaintiffs' chosen district, then courts generally place less importance on this factor . . . even where . . . plaintiffs reside[] there." *Demers, Jr. v. Pilkington N. Am., Inc.*, No. 10-CV-296-JL, 2010 WL 4683780, at *6 (D.N.H. Nov. 10, 2010); *see also Moore's* § 111.13[1][c][iii]. "[T]he situs of the operative events in a lawsuit generally bears on the transfer decision [] insofar as it impacts the other factors, such as the location of witnesses and evidence." *Id*.

The defendants provide the following operative events which weigh in favor of transfer: the performance of the restoration contract took place in Massachusetts; all renovation work on plaintiff's vessel took place in Massachusetts; any purported breach took place in Massachusetts; the vessel itself is still in Massachusetts; and all of defendants' employees who worked on the vessel and who would be material witnesses are in Massachusetts.

### 2.    *Convenience of the Witnesses and Private Interest Factors*

When considering a motion to transfer venue, "[t]he most important factor in deciding whether to transfer an action is the convenience of witnesses." *Demers, Jr.*, 2010 WL at *6; *see also Bowen v. Elanes New Hampshire Holding, LLC*, 166 F. Supp. 3d 104, 108-109 (D. Mass. 2015); *Atari v. UPS, Inc.,* 211 F. Supp. 2d 360, 362 (D. Mass. 2002). Including the parties[], there are a total of thirteen witnesses. Only two of them, plaintiffs, reside in Puerto Rico. Plaintiff's son, who would testify on the initiation of the parties' negotiation, resides in Massachusetts. From the remainder of the potential witnesses, plaintiffs will likely call all those who worked on the vessel or were

involved in recommending to replace its hull, seven in total.  As already indicated, all of defendants' employees who worked on the vessel's restoration and are likely material witnesses, four in total, are all located in Massachusetts.

Importantly, district courts give the convenience for non-party witnesses even greater weight.  *See., e.g. Aquatic Amusement Assocs., Ltd. v. Walt Disney World Co.,* 734 F. Supp. 54, 57 (N.D.N.Y. 1990); *Nieves v. American Airlines,* 700 F. Supp. 769, 772 (S.D.N.Y. 1988); *Zinky Elecs., LLC v. Victoria Amplifier Co.*, No. CIV.A. 09-CV-26JCH, 2009 WL 2151178, at *4 (D. Conn. June 24, 2009).   Three non-party witnesses, two who consulted on the restoration project, and the lead designer, reside in Rhode Island and New Jersey, respectively.  It is more convenient for the Rhode Island residents to commute to the district court in Massachusetts, by train or driving, than traveling to Puerto Rico, which requires either a connecting flight or commuting to Massachusetts to fly to San Juan.  Should they need to testify, the Rhode Island residents would be unable to return to their workplace or home after participating in proceedings if forced to travel to Puerto Rico.  And although flying from New Jersey to Puerto Rico is not so burdensome, it is considerably cheaper to drive from New Jersey to Massachusetts.  When taking these witnesses in to consideration, this factor weighs strongly in favor of transfer. Discovery for these non-party witnesses would also be more economical for both parties if the case were litigated in Massachusetts, which furthers the factor of trying the case inexpensively.

The Court need not go further. Taking these factors into account, transferring the case to Massachusetts serves the interests of justice.

## CONCLUSION

For the reasons stated, defendants' motion (**d.e. 7**) is DENIED, as to the request for dismissal, and GRANTED, as to the request to transfer venue to the District of Massachusetts. The clerk SHALL forthwith transfer venue to that District and close the action in ours.

SO ORDERED.

At San Juan, Puerto Rico, on April 4, 2018.


S/CARMEN CONSUELO CEREZO
United States District Judge